# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMY LOPEZ, individually and on behalf of all persons similarly situated, | : CIVIL ACTION NO.: 5:16-CV-00148-M |
| Plaintiff, | : |
| v. | : |
| T/J INSPECTION, INC. | : |
| Defendant. | : |

**DECLARATION OF SARAH R. SCHALMAN-BERGEN IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT AND ATTORNEYS' FEES AND COSTS**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1. I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* to this Court. I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

2. I am a Shareholder of Berger & Montague, P.C. ("Berger & Montague") and Lead Counsel for Plaintiff and the Settlement Collective in the above-captioned litigation. Berger & Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. I have attached a copy of our firm's resume hereto as Exhibit 1. Berger & Montague currently consists of approximately 60 attorneys who represent plaintiffs in complex and class action litigation.

Our firm's Employment Law Department has extensive experience representing employees in class action litigation. Berger & Montague has played lead roles in major class action cases for over 40 years, resulting in recoveries totaling billions of dollars for our firm's clients and the classes they represent.

3. I am the Co-Chair of the Employment Rights Department at Berger & Montague, and I have an extensive background in litigation on behalf of employees. I am currently serving as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage cases similar to this case. This level of experience enabled my firm to undertake this matter and to efficiently and successfully prosecute these claims on behalf of the Settlement Collective.

4. Practice in the narrow area of wage and hour class and collective action litigation requires skill, knowledge and experience in two distinct subsets of the law. Expertise in one does not necessarily translate into expertise in the other. Class Counsel must have expertise in both. The issues presented in this case required more than just a general appreciation of wage and hour law and class action procedure, as this area of practice is rapidly developing.

5. On February 13, 2016, Plaintiff commenced this action by filing a Complaint in this Court (Dkt. No. 1). On June 6, 2016 – approximately five months after the Plaintiff filed his Complaint – the parties filed a joint motion to stay the case in order to discuss early mediation. (ECF No. 28.) Class Counsel agreed to participate in early mediation as long as the statute of limitations for potential opt-in plaintiffs' FLSA claims were tolled. Without a tolling agreement in these types of cases, Class Counsel would be beholden to

file a motion for conditional certification as quickly as possible in order to preserve potential opt-in's claims as much as possible. This allowed the Parties fully engage in good faith in early mediation and reach this Settlement.

6.     On August 16, 2016, the parties participated in a mediation session in Oklahoma City, Oklahoma before experienced mediator Michael Lauderdale of the law firm McAfee & Taft, P.C.  In preparation for this session, our law firm continued the investigation of the law and the facts at issue in this case.  We reviewed and analyzed Defendant's document production, including payroll information, and conducted an extensive analysis of Defendant's potential liability in this case, using spreadsheets and formulae to account for differing legal and factual scenarios.  Specifically, Defendant produced: (a) available records of hours worked and all forms of compensation received by Plaintiff and the Collective Members; (b) documents summarizing or describing the job duties of Collective Members during the Class Period; and (c) sample rate schedules and other policy documents.

7.     Plaintiff agreed to produce and did produce a detailed economic analysis, the amount of unpaid wages alleged by Plaintiff, a list of all wage and hour lawsuits in which Plaintiff has participated, and a list of all entities or individuals for whom Plaintiff has performed any type of inspection work.  In preparing for mediation, Class Counsel reviewed Defendant's payroll and personnel documents and, based on the data provided, generated a damages analysis consisting of various models representing different assumptions.  Class Counsel then worked with Defendant's Counsel to answer any questions either party may have on the data and damages analysis provided.  We also

3

prepared a detailed mediation statement summarizing the relevant law and factual background, and submitted it to Defendant and the mediator.

8. The Parties were not able to reach a settlement at the mediation, and continued to engage in settlement negotiations in the following months, both with the assistance of Mr. Lauderdale, and through counsel. As a result of further correspondence and additional arm's length negotiations, the parties finalized their settlement agreement, which includes a gross settlement amount of $2,000,000.00.

9. I believe that the settlement is not only fair and reasonable and in the best interests of the Settlement Collective, it is excellent. This settlement presents an extremely good recovery, as it confers a substantial benefit on members of the Settlement Collective. The settlement offers significant advantages over the continued prosecution of this case: the Settlement Collective will receive significant and immediate financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to its liability, and taking into consideration T/J Inspection's financial status, and the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable. Defendant also asserted that its financial condition would cause it to be unable to pay a full judgment even if such a judgment were obtained, and as part of settlement negotiations, provided Class Counsel with certain financial documents in support of that claim.

10. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Collective are provided with Notice of the Settlement Agreement and its terms. A draft of the Notice was

4

prepared by Class Counsel and approved by Defendant. *See* Settlement Agreement, Ex. A. The Notice explains the allocation of the Gross Settlement Fund. Class Counsel also prepared a 90-day Reminder Notice and a 60-day call script for those who have yet to cash their checks before the 180-day deadline. *See id.* Ex. B and C. Both were also reviewed and approved by Defendant.

11. The Settlement Administrator is responsible for calculating Settlement payments in this case. Based on the terms of the Settlement Agreement, the Gross Settlement Amount is based on an analysis of workweeks that the Settlement Collective Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records. The Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiff's calculated potential damages.

12. In addition, the Gross Settlement Amount takes into account the fact that T/J Inspection asserted that its financial condition would make it unable to pay a larger judgment.

13. There is no claims process, and a Settlement Collective Member need not take any action in order to receive a settlement award. Each Eligible Collective Member will receive a minimum amount of $150, regardless of the number of settlement shares allocated to that Eligible Collective Member. Only those Settlement Collective Members who cash their checks will release their claims against Defendant.

14. The settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate. It is, I believe, in the

best interests of the Settlement Collective as it will yield a prompt, certain and very substantial recovery for the Settlement Collective Members.

15.     Subject to Court approval, Class Counsel has retained a third party administrator, The Angeion Group, to serve as the Settlement Administrator to administer notice to the Collective Members, calculate each Collective Member's share of the Net Settlement Amount, coordinate tax administration, and issue checks to distribute the Gross Settlement Amount.  There are 518 Settlement Collective Members, including Plaintiff. The Angeion Group has agreed to perform administration duties for an amount not to exceed $12,500.00.

16.     In this action, Plaintiff took very real steps to advance the interests of the Settlement Collective in this litigation. Plaintiff took the significant risk of coming forward to represent the interests of her fellow employees. He worked with Class Counsel, providing background information about his employment, about Defendant's policies and practices, and about the allegations in this lawsuit. Plaintiff risked his reputation in the community and in his field of employment in order to participate in this case on behalf of the Collective.

17.     In addition, Plaintiff's service award of $15,000 is justified because he agreed to a broader release of his claims against Defendant.

## SUMMARY OF WORK PERFORMED BY BERGER & MONTAGUE

18.     Shanon Carson and I were the lead Shareholders at Berger & Montague with respect to this case.  I directed the work of the other attorneys at my firm, conducted a legal analysis of the facts presented by this case and presented legal arguments to opposing

6

counsel. In this capacity, I: 1) conducted the initial case investigation; 2) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 3) devised and implemented strategy and participated in numerous meetings and telephone conferences with Defendant's counsel related to the litigation and settlement; 4) coordinated the review of Defendant's documents; 5) researched relevant issues for litigation; 6) conducted damages analyses in preparation for mediations; 7) reply correspondence in advance of mediation on August 16, 2016; 9) assisted in directing the settlement conference that resulted in the settlement, and negotiated the details and terms of the Settlement Agreement; 10) edited the Settlement Agreement; and 11) edited Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs.

19. The other co-chair of the Employment Rigths Department and Executive Committee Member, Shanon J. Carson 1) assisted in overseeing and managing, the duties of a team of attorneys throughout this litigation; 2) devised and implemented strategy and participated in numerous meetings and telephone conferences with Defendant's counsel related to the litigation and settlement; and 3) directed the settlement conference that resulted in the settlement, and negotiated the details and terms of the Settlement Agreement.

20. An associate of our firm, Camille Fundora, was the primary associate on this case, researched relevant issues for litigation; reviewed documents produced by Defendant; maintained client contact throughout the litigation; reply correspondence in advance of mediation on August 16, 2016; drafted Settlement Agreement; and drafted and edited

Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs.

21. All of the work described above was reasonable and necessary to the prosecution and settlement of this case. Class Counsel collectively conducted an extensive factual investigation and engaged in significant motion practice during the prosecution of this action. Through this comprehensive evaluation of the facts and law, Class Counsel was able to settle this case for a substantial sum. Class Counsel achieved this result in a very timely fashion, providing members of the Settlement Collective with substantial and certain relief much sooner than if this matter had been extensively litigated.

22. The settlement reached with Defendant through the ADR process, which involves complex provisions that are specific to class action litigation of wage and hour law, is a reflection of Class Counsel's experience. Class Counsel negotiated a complicated settlement without significant disputes between the parties. The settlement provides members of the Settlement Collective with substantial benefits without having to wait for years of drawn out litigation. Based upon the foregoing reasons, Class Counsel respectfully requests that this motion be granted.

23. Due to the amount of privileged information contained in Berger & Montague's actual hourly billing records, those detailed records are not attached here, but can easily be provided for this Court's *in camera* review should the Court wish to review them.

24. The hourly rates for the partners, attorneys, and professional staff are the same as would be charged in non-contingent matters and/or which have been accepted and

approved in other recent class and collective action wage and hour litigation by this Court. *See Hively v. Archer Well Co., Inc.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014) (approving fee rates for Berger & Montague, P.C.).

25. Class Counsel assumed a very real risk in taking on this contingent fee case, and was prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery.

26. As part of the negotiations that led to the Settlement, Defendant agreed not to object to an award of one-third of the Gross Settlement Amount for attorneys' fees and costs.

## BERGER & MONTAGUE'S EXPENSES

27. This litigation required my firm to advance costs. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

28. As of March 17, 2017, my firm expended costs in the amount of $9,457.86 to prosecute this action, as follows:

| Expense | Amount |
| --- | --- |
| Court Fees | $930.00 |
| Computer Research | $788.94 |
| Copying | $157.05 |
| Document Production and Hosting Costs | $7.18 |
| Telephone | $5.67 |
| Travel | $3,755.72 |
| Mediation Fees | $3,750.00 |
| Postage | $63.30 |
| **Total** | **$9,457.86** |

29. The expenses incurred pertaining to this case are reflected in the books and

records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. All of the expenses incurred were reasonable and necessary to the prosecution of this case.

Dated: March 17, 2017                                              /s Sarah R. Schalman-Bergen
                                                                                    Sarah R. Schalman-Bergen

# Exhibit A



1622 Locust Street | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

### About Berger & Montague

Berger & Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation.  In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs side," has selected Berger & Montague in 11 out of the last fourteen years (2003-05, 2007-13, 2015-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*.

Currently, the firm consists of 59 lawyers; 18 paralegals; and an experienced support staff.  Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

### History of the Firm

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions.  David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts.  The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients.  In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 40 years of civil litigation.  For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's.  The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million.  Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered

1

in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger & Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

**Employment Law**

The Berger & Montague Employment Law group works tirelessly to safeguard the rights of employees, and devote all of their energies to helping our firm's clients achieve their goals. Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

- *Jantz v. Social Security Administration:* The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities. The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions. The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million. EEOC No. 531-2006-00276X (2015).

- *Ciamillo v. Baker Hughes, Incorporated:* The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- *Employees Committed for Justice v. Eastman Kodak Company:* The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval). A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss). No. 6:04-cv-06098 (W.D.N.Y.)).

- *Salcido v. Cargill Meat Solutions Corp.:* The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks. This is one of the largest settlements of this type of case involving a single plant in U.S. history. (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- *Miller v. Hygrade Food Products, Inc.:* The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant. (No. 99-1087 (E.D. Pa.)).

- *Chabrier v. Wilmington Finance, Inc.:* The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages. A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class). (No. 06-4176 (E.D. Pa.)).

- ***Bonnette v. Rochester Gas & Electric Co.:***  The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.  (No. 07-6635 (W.D.N.Y.)).

- ***Confidential.***  The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Attorney Profiles

**Shanon J. Carson – Managing Shareholder**

Shanon J. Carson is a Managing Shareholder of the Firm.  He is the Chair of the Firm's Employment Law Department and a member of the Firm's Commercial Litigation, Consumer Protection, Employee Benefits/ERISA, and Lending Practices and Borrowers' Rights Departments.  Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale Hubble, and has repeatedly been singled out for honors and awards by numerous publications.  In 2015, Mr. Carson was selected as one of the top 100 attorneys in Philadelphia, and as one of the top 100 attorneys in Pennsylvania, as reported by Thomson Reuters.

Mr. Carson concentrates his practice on the prosecution of class actions and collective actions on behalf of employees, consumers, borrowers, insureds, investors, and businesses.  Mr. Carson regularly is selected to serve as lead counsel in class actions and other complex litigation in federal and state courts across the United States.

Mr. Carson prosecutes all types of class actions, including employment cases, wage and hour cases, ERISA cases, consumer cases, insurance cases, construction cases, product liability cases, invasion of privacy cases, and excessive fee cases, among others.

Mr. Carson also serves as counsel to The Multihull Company, Inc., an international distributor of fine yachts and catamarans.

Mr. Carson is active in non-profit and professional organizations and is available for speaking engagements concerning the U.S. civil law system, class actions and collective actions, employment law, consumer law, and other legal issues.

While in law school, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge.

**Sarah R. Schalman-Bergen – Shareholder**

Sarah R. Schalman-Bergen is a shareholder in the Antitrust and Employment Law practice groups at Berger & Montague.  Her practice focuses on antitrust class action litigation, and class and collective action employment litigation.  Ms. Schalman-Bergen has extensive litigation experience in both state and federal courts, including significant appellate experience.

In the Employment Law practice group, Ms. Schalman-Bergen's practice focuses on wage and hour class and collective actions, as well as class action discrimination lawsuits under state and federal law.  Specifically, Ms. Schalman-Bergen has worked on all aspects of wage and hour overtime lawsuits throughout the country, representing employees whose employers do not pay them properly in different industries, including oil and gas companies, meat and poultry plants, at fast food restaurants, in white collar jobs and in the government.

In the Antitrust practice group, Ms. Schalman-Bergen has had an active role in prosecuting complex cases, including multidistrict litigation.  Ms. Schalman-Bergen was involved in representing the employees of several high tech companies who allege that the companies illegally suppressed employees' wages, and has also worked on cases involving anticompetitive practices in the pharmaceutical industry.

Ms. Schalman-Bergen has also been involved in multiple nationwide consumer class actions with a focus on consumer financial practices, representing homeowners whose mortgage loan servicers have force-placed extraordinarily high-priced insurance on them and allegedly received a kickback from the insurer in exchange.

Ms. Schalman-Bergen maintains an active pro bono practice.  She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania.  Through her role there, Ms. Schalman-Bergen litigates HIV discrimination cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining Berger & Montague, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation.  Ms. Schalman-Bergen is a graduate of Harvard Law School and Tufts University. During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review.

**Camille Fundora – Associate**

Ms. Fundora is an Associate in the Firm's Employment Law, Consumer Protection, and Lending Practices & Borrowers' Rights practice groups.  Ms. Fundora primarily focuses on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws.  Ms. Fundora has served in key roles in multiple class and collective employment action settlements.

Prior to joining Berger & Montague, Ms. Fundora practiced in the litigation department at a boutique Philadelphia law firm where she represented clients in a variety of personal injury, disability, and employment discrimination matters.  Ms. Fundora is a graduate of Columbia University, Barnard College and Widener University School of Law.  During law school, Ms. Fundora served as the Vice President, Academic of the Student Bar Association.

Ms. Fundora is an active member of the Pennsylvania, Philadelphia and Hispanic Bar Associations.