# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMY LOPEZ, individually and on behalf of all persons similarly situated, | : CIVIL ACTION NO.: 5:16-CV-00148-M |
| Plaintiff, | |
| v. | |
| T/J INSPECTION, INC., | |
| Defendant. | |

## SETTLEMENT AGREEMENT

Plaintiff Jeremy Lopez ("Lopez") and Defendant T/J Inspection, Inc. ("T/J Inspection") hereby agree to the following binding settlement of the putative collective action lawsuit captioned *Lopez v. T/J Inspection, Inc.*, No. 5:16-CV-00148-M (W.D. Okla.).

**WHEREAS**, Lopez filed a Collective Action Complaint asserting claims against T/J Inspection under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for the alleged failure to pay overtime compensation to Plaintiff and similarly situated individuals (the "Litigation"); and

**WHEREAS**, T/J Inspection denies all of the allegations made by Lopez in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, to avoid incurring additional costs in the Litigation and without admitting or conceding any liability or damages whatsoever, T/J Inspection has agreed to settle the Litigation on the terms and conditions set forth in this Agreement; and

**WHEREAS**, on August 16, 2016, the Parties participated in a mediation session of this matter, which was conducted by experienced mediator Michael Lauderdale of the law firm of McAfee & Taft, P.C in Oklahoma City, Oklahoma, and reached an accord after substantial continuing settlement discussions following the in person mediation session, which have resulted in this Agreement; and

**WHEREAS**, Plaintiff's Counsel analyzed and evaluated the merits of the claims made against T/J Inspection in the Litigation, conducted interviews with Lopez, obtained and reviewed documents relating to T/J Inspection's compensation policies and practices,

and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including T/J Inspection's financial status and the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiff's Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiff and similarly situated individuals.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. Lopez and T/J Inspection agree that Fair Labor Standards Act ("FLSA") collective action treatment is proper and further agree that evidence of this limited stipulation for settlement purposes only will not be admissible for any reason except to obtain approval of or to enforce this Settlement Agreement. T/J Inspection contends that if this case were to be litigated, collective action treatment under the FLSA would be inappropriate. Should this Settlement not become final, the stipulation to conditional certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context. For settlement purposes only T/J Inspection will stipulate that the following collective may be certified and defined as follows:

> All current or former employees of T/J Inspection, Inc. (T/J Inspection) who performed work in the United States at any time between February 13, 2013 and the date of the Court's approval of the settlement, who were paid pursuant to a daily rate compensation system (the "Settlement Collective" or "Collective Members").

T/J Inspection has produced data confirming that there are approximately 518 members of the Settlement Collective, including Plaintiff. Plaintiff has relied on this number in agreeing to this settlement.

2. This lawsuit is settled for Two Million Dollars ($2,000,000.00). This sum (the "Gross Settlement Amount") includes: (a) Plaintiff's Counsel's attorneys' fees in an amount not to exceed one-third (1/3) of the Gross Settlement Amount; (b) Plaintiff's Counsel's costs as approved by the Court; (c) a service award in amount of $15,000 to Plaintiff Jeremy Lopez; (d) all costs and fees of the independent Settlement Administrator not to exceed $12,500; and (e) T/J Inspection's share of payroll taxes applicable to any portion of the Gross Settlement Amount including, without limitation, that part of the net settlement funds that are attributable to wages. T/J Inspection shall be responsible for its own attorneys' fees and costs. T/J Inspection will not be required to pay any other sums

to settle or to process the settlement of the Litigation. The Parties acknowledge that the negotiated Gross Settlement Amount is based, in part, on T/J Inspection's inability to pay a greater amount, and that T/J Inspection showed Plaintiff's Counsel a copy of certain financial documents on a confidential basis as part of settlement negotiations.

3. The Settlement Administrator will establish a Qualified Settlement Fund ("QSF") pursuant to Section 468B(g) of the Internal Revenue Code for the purpose of administering the settlement funds. T/J Inspection will fund the settlement by depositing the Gross Settlement Amount into the QSF as follows:

   a. **First Payment**: Seven Hundred and Fifty Thousand Dollars ($750,000.00) of the Gross Settlement Amount by wire into the QSF by five (5) business days after the Court grants approval of the Settlement;

   b. **Second Payment**: Six Hundred Thousand Dollars ($600,000.00) of the Gross Settlement Amount by wire into the QSF on or before July 1, 2017; and

   c. **Final Payment**: Six Hundred and Fifty Thousand Dollars ($650,000.00) of the Gross Settlement Amount by wire into the QSF on or before October 1, 2017.

4. After subtracting the amounts itemized in Paragraph 2(a) through (e) from the Gross Settlement Amount, the balance of the funds ("Net Settlement Amount") shall be apportioned among all Collective Members as follows:

   a. The amount of $150 per Collective Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Collective Member so that each Collective Member receives at least $150 in exchange for his/her release in this Settlement Agreement.

   b. Collective Members will receive settlement shares which equal the total number of workweeks s/he performed work for T/J Inspection between February 13, 2013 and the date of the Court's approval of the settlement and was paid on pursuant to a daily rate compensation system. A "Settlement Share" shall be equal to one such workweek occurring during the above specified period, by a Collective Member.

   c. The total number of Settlement Shares for all Collective Members will be added together and the resulting sum will be divided into the Net Settlement Amount (less the allocation of $150 per Collective Member) to reach a per Settlement Share dollar figure. That figure will then be multiplied by each Collective Member's total number of Settlement Shares, and added to the

3

$150 set aside to determine the individual Collective Member's Settlement Award.

    d.    All Settlement Award determinations shall be based on T/J Inspection's available payroll data for Collective Members, and shall be provided to the Settlement Administrator by Plaintiff's Counsel subject to the provisions of the Protective Order entered by the Court on or about July 26, 2016, a copy of which will be provided to the Settlement Administrator by Plaintiff's Counsel.

5.    Subject to Court approval, The Angeion Group shall serve as Settlement Administrator for the purpose of administering notice to the Collective Members, calculating each Collective Member's share of the Net Settlement Amount, and issuing checks to distribute the Gross Settlement Amount.

6.    Fifty percent (50%) of each Collective Member's settlement share shall be treated as back wages so the Settlement Administrator shall effectuate federal and applicable state income and other employment tax withholding as required by law with respect to that 50%; the Settlement Administrator shall pay all required withholding taxes and other payroll taxes (including unemployment insurance taxes) to the appropriate governmental authorities. The remaining 50% of each settlement share shall be treated as non-wage interest and/or damages or liquidated damages, shall be reported on an IRS Form 1099, and shall not be subject to withholding taxes. T/J Inspection shall provide the Settlement Administrator with the information itemized in paragraph 7 below to accomplish this tax withholding and reporting. Notwithstanding the treatment of the settlement amounts above, none of the payments, including the wages portion, will be treated as earnings or wages under any benefit or retirement plans. Finally, Plaintiff's Counsel will be issued an IRS Form 1099 from the Settlement Administrator for the award of attorneys' fees and costs and Plaintiff Lopez will be issued an IRS Form 1099 with respect to his service award.

7.    Subject to the provisions of the Protective Order entered by the Court on or about July 26, 2016, within ten (10) business days after the Court's Approval Order, T/J Inspection will provide Plaintiff's Counsel and the Settlement Administrator with a list setting forth for all Collective Members their names, last known addresses, last known telephone numbers, last known email addresses, and social security numbers. The Settlement Administrator will run the list of Collective Members through the U.S. Postal Service's National Change of Address database ("NCOA") to obtain updated contact information.

8.    Within ten (10) business days after T/J Inspection wires its Second Payment of the Gross Settlement Amount into the QSF, the Settlement Administrator will send all Collective Members via First Class Mail 1) a Notice of Settlement in the form attached

4

hereto as Exhibit A, and 2) a settlement check with the amount of their Settlement Award.

9. Plaintiff and Collective Members who cash their settlement checks shall release any and all overtime claims that accrued during their employment with T/J Inspection, T/J Inspection Training Center, Inc. and all of their past and present parent companies, investors in any of those companies, owners, controlling persons, subsidiaries, affiliates, shareholders, directors, officers, employees, insurers, reinsurers, attorneys and agents, (collectively, the "Released Parties") at any time between February 13, 2013 through the date of the Court's approval of the Settlement Agreement including, without limitation, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses (collectively, the "Released Claims").

10. In addition, Plaintiff Lopez also hereby grants a general release to the Released Parties as additional consideration for his service award in the amount of Fifteen Thousand Dollars ($15,000.00). This general release shall include all demands, claims and actions, whether known or unknown, relating to his employment, termination of employment, contact or relationship to date with the Released Parties, including rights or claims arising under any agreement with the Released Parties or under any federal, state or local laws, including but not limited to, **all as amended**, the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation) Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, Oklahoma Protection of Labor Act, Oklahoma Anti-Discrimination Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date Lopez signs this Agreement; provided, however, that Lopez does not release any claim that cannot be released as a matter of law or rights under this Agreement.

11. Each settlement check will contain the following limited endorsement, placed on the back of the check by the Settlement Administrator, to satisfy any applicable procedural protocols under the FLSA:

> By cashing this check, I hereby consent to opt in to the collective action in *Lopez v. T/J Inspection, Inc.*, No. 5:16-CV-00148-M (W.D. Okla.) as a party plaintiff pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"). By cashing this check, I agree to and do release T/J Inspection, Inc. and all Released Parties from all overtime claims that accrued during my employment with T/J Inspection at any time between February 13, 2013 through [the date of the Court's Approval Order].

Collective Members will only release the Released Parties from the Released Claims upon signing, depositing, and/or cashing their settlement checks.

5

12.     All settlement checks will remain negotiable for 180 days from the date they are issued. The Settlement Administrator shall send a reminder letter via U.S. mail and/or email to those who have not yet cashed their settlement check after 90 days, and may call those that have still not cashed their check to remind them to do so within the last 60 days of the check-cashing period.

13.     At any point in the check-cashing period, the Settlement Administrator shall have the authority to stop payment on a lost check and issue a new check to an eligible Collective Member upon request. The Settlement Administrator will maintain copies of all negotiated checks and shall prepare and send a declaration to the Parties at the conclusion of the 180 day check-cashing period listing the names of all Collective Members who signed, deposited and/or cashed their settlement checks.

14.     If Collective Members have not signed, deposited and/or cashed their settlement checks by the 180-day deadline, then the total amount of the uncashed checks (and the corresponding withholdings and payroll taxes attributable to those uncashed checks) shall be remitted by the Settlement Administrator to T/J Inspection within ten (10) business days after that deadline, in recognition that T/J Inspection is not receiving a release from eligible Collective Members who do not sign, deposit, and/or cash their settlement checks.

15.     Subject to the Court's approval, Class Counsel shall receive attorneys' fees in an amount up to one-third (1/3) of the Gross Settlement Amount, which will compensate Class Counsel for all work performed in the Action as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Actions. In addition, Class Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court. Payment of attorneys' fees and out-of-pocket costs shall be made within three (3) business days after T/J Inspection remits its Final Payment into the QSF.

16.     Lopez and T/J Inspection agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement Agreement. Both will use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary or ordered by the Court, to effectuate this Settlement Agreement and the terms set forth herein. As soon as practicable after execution of this Settlement Agreement, Plaintiff's Counsel will, with the assistance and cooperation of T/J Inspection and its counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement and to implement its terms. Neither will discourage participation in this

Settlement Agreement.

17. The Parties have prepared a judgment in favor of Plaintiff and the Settlement Collective against T/J Inspection and its owner, Tricia Junghanns, in her individual capacity in the amount of the Gross Settlement Amount, which is attached as Exhibit B. The judgment shall be held by Michael Lauderdale of the law firm McAfee & Taft, P.C. and shall not be filed unless T/J Inspection defaults on any scheduled payment of the Gross Settlement Amount, but only after being provided thirty (30) days to cure the defaulted payment. T/J Inspection agrees that the judgment shall be filed at least five (5) business days before T/J Inspection declares any bankruptcy.

18. If the Court does not enter an Approval Order, or decides to do so only with material modifications to the terms of the Settlement Agreement, or if the Approval Order is reversed or vacated by an appellate Court, then this Settlement Agreement shall become null and void, unless the Parties agree in writing to modify this Settlement Agreement and the Court approves the modified Settlement Agreement.

19. The signatories to this Settlement Agreement represent that each is fully authorized to enter into this Settlement Agreement on behalf of themselves or their respective principals. The Notice of Settlement will inform all Collective Members of the binding nature of this Settlement Agreement and that it will have the same force and effect as if this Settlement Agreement were executed by each Collective Member.

**FOR LOPEZ AND THE CLASS**

*Shanon J. Carson*                                   Dated: February 16, 2017

Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
Camille Fundora
BERGER & MONTAGUE, P.C.

Kevin S. Locke
TAYLOR LUCAS & ASSOCIATES

**JEREMY LOPEZ**

[signature]                                           Dated: Feb. 16, 2017

Jeremy Lopez

7

**FOR T/J INSPECTION, INC.**

_____   Dated: __2-20__, 2017
By: Tricia Junghanns, CEO

_____   Dated: __2/20__, 2017
Elaine R. Turner
Nathaniel T. Haskins
HALL, ESTILL, HARDWICK, GABLE
GOLDEN & NELSON, P.C.

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEREMY LOPEZ, individually and on behalf of all persons similarly situated,** : <br> : CIVIL ACTION NO.: 5:16-CV-00148-M <br> : <br> **Plaintiff,** : <br> : <br> **v.** : <br> : <br> : <br> **T/J INSPECTION, INC.** : <br> : <br> **Defendant.** : | |

## NOTICE OF COLLECTIVE ACTION SETTLEMENT
## AND SETTLEMENT AWARD CHECK

TO:  [Collective Member Name]
     [Address]
     [Address]
     [Last Four Digits of Social Security No.]

*The Court authorized this Notice of Collective Action Settlement and Settlement Award Check. This is not a solicitation. This is not a lawsuit against you and you are not being sued.*

**PLEASE READ THIS NOTICE CAREFULLY.**

| 1. | Why Should You Read This Notice? |
|---|---|

You received this Notice because T/J Inspection, Inc.'s ("T/J Inspection" or "Defendant") records show that you have worked for T/J Inspection in a job paid on a daily rate basis in at least one workweek between February 13, 2013 and [DATE OF APPROVAL ORDER] in the United States ("Collective Members").

The parties to the lawsuit agreed to settle this lawsuit – which alleges that Collective Members should have been paid overtime compensation – on behalf of a collective of approximately [INSERT NUMBER] current and former employees of T/J Inspection. The Court has approved the Settlement as fair and reasonable. The Court will hold a Final Approval Hearing on [INSERT DATE] before The Honorable Vicki Miles-LaGrange of the United States District Court for the Western District of Oklahoma, in Courtroom 304, 200 NW 4th Street, Oklahoma City, OK 73102.

1

**This Notice explains the terms of the settlement and your right to your award under the settlement.**

| 2. What Are the Terms of the Settlement? |
|---|

Under the terms of the Settlement Agreement ("Settlement Agreement"), T/J Inspection has agreed to pay Two Million Dollars ($2,000,000.00) to settle the claims asserted in this lawsuit (the "Gross Settlement Amount"). Deductions from this amount will be made for (a) Plaintiff's Counsel's attorneys' fees in an amount not to exceed one-third (1/3) of the Gross Settlement Amount; (b) Plaintiff's Counsel's costs as approved by the Court; (c) service award of $15,000 for Plaintiff Jeremy Lopez; (d) all costs and fees of the independent Settlement Administrator which are expected not to exceed $12,500; and (e) T/J Inspection's share of payroll taxes on that part of the net settlement funds that are attributable to wages. After subtracting these amounts from the Gross Settlement Amount, the balance of the funds (the "Net Settlement Amount") shall be apportioned among all eligible Collective Members.

**Your Settlement Award check is enclosed. Please note that your check will automatically expire on [DATE]. Therefore, please remember to cash or deposit your check AS SOON AS POSSIBLE.**

The Settlement Awards are calculated as follows:

- [INSERT FORMULA]

- Settlement Award determinations are based on T/J Inspection's personnel and payroll records between February 13, 2013 and the [APPROVAL ORDER DATE].

- Fifty percent (50%) of each Collective Members' Settlement Award shall be treated as back wages, and fifty percent (50%) shall be treated as interest and/or liquidated damages. The portion allocated to claims for unpaid overtime and other wage-related damages will be subject to all required employee and employer-paid payroll taxes and deductions. The portion allocated to interest and liquidated damages shall be characterized as non-wage income to the recipient and you will be responsible for any applicable taxes on this portion.

By signing, depositing, or cashing your Settlement Award check, you consent to join this lawsuit and to release claims against T/J Inspection. For your convenience, the specific language of the Court-approved Settlement is as follows:

> By signing, depositing, and/or cashing this check, I hereby consent to opt in to the collective action in *Lopez v. T/J Inspection, Inc.,* No. 5:16-CV-00148-

2

M (W.D. Okla.) as a party plaintiff pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"). I further agree to release T/J Inspection, Inc. ("T/J Inspection") and all Released Parties from all claims, both known and unknown, that arise out of my employment with T/J Inspection under the FLSA, state statutory law (excluding workers' compensation laws, unemployment compensation laws, and discrimination laws), or common law (*e.g.*, unjust enrichment, quantum meruit, etc.) concerning my compensation, hours of work, pay for those hours of work, or T/J Inspection's payroll practices between February 13, 2013 and [the date of the Court's Approval Order].

### 3. What Are My Rights?

• *<u>Along with this Notice, you received a settlement check.</u>* If you do not cash the check within 180 days from the date it is issued, you will forfeit your right to a Settlement Award and will not be bound by the Settlement.

• If you received this Notice and wish to object to the Settlement, you must submit an objection stating the factual and legal grounds for your objection to the Settlement, postmarked by [INSERT DATE]. Your objection must state your full name, address, telephone number, and email address (if applicable), and must be signed by you. Any objection must be mailed to the Settlement Administrator by either first class mail, email, or by overnight courier.

### 4. Can Current Employees of T/J Inspection Participate In This Settlement?

Yes. If you are a current employee of T/J Inspection, your decision as to whether or not to participate in this Settlement will in no way affect your employment with T/J Inspection. In fact, T/J Inspection encourages each Collective Member to participate in and to cash or deposit his or her Settlement Award check

### 5. Who Are The Attorneys Representing Plaintiff And The Collective?

Plaintiff and the Settlement Collective are represented by the following attorneys acting as Plaintiff's Counsel:

| | |
|---|---|
| Shanon J. Carson | Kevin S. Locke |
| Sarah R. Schalman-Bergen | **Taylor Lucas & Associates** |
| Alexandra K. Piazza | 1132 N Broadway Ave |
| Camille Fundora | Oklahoma City, OK 73103 |
| **BERGER & MONTAGUE, P.C.** | Telephone: 405-232-8585 |
| 1622 Locust Street | Facsimile: 405-232-8588 |
| Philadelphia, PA 19103 | kevin.locke@taylorlucas.com |
| Telephone: (215) 875-3033 | |
| Facsimile: (215) 875-4604 | |
| Email: cfundora@bm.net | |
| Website: www.bergermontague.com | |

### 6. How Will the Attorneys for the Settlement Collective Be Paid?

You do not have to pay the attorneys who represent the Collective separately. The Settlement Agreement provides that Plaintiff's Counsel may receive attorneys' fees of up to one-third (1/3) of the Gross Settlement Amount. Plaintiff's Counsel may also recover their out-of-pocket costs. Plaintiff's Counsel filed a Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs with the Court. The actual amount of attorneys' fees and costs awarded are determined by the Court.

### 7. Who May I Contact If I Have Further Questions?

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Settlement Administrator at the toll-free telephone number or email address listed below. Please refer to the T/J Inspection, Inc. Overtime Settlement.

*T/J Inspection, Inc. Overtime Settlement*
XXX [INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

You may also contact the attorneys representing the Plaintiff and the Collective whose contact information is set forth in Section 5, above.

This Notice only summarizes the Lawsuit, the Settlement and related matters. For more information, you may inspect the Court files at the Office of the Clerk, United States District Court located at 200 NW 4th Street, Oklahoma City, OK 73102, from 8:30 a.m. to 4:30 p.m., Monday through Friday.

**PLEASE DO NOT CONTACT THE COURT.**

4

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEREMY LOPEZ, individually and on behalf of all persons similarly situated,**  :  :  **Plaintiff,**  :  :  **v.**  :  :  **T/J INSPECTION, INC.**  :  :  **Defendant.** | : CIVIL ACTION NO.: 5:16-CV-00148-M |

**REMINDER: 90 DAYS UNTIL CHECK CASHING DEADLINE**

TO:   [Collective Member Name] [Address]
      [Address]
      [Last Four Digits of Social Security No.]

You were sent a check for the settlement of this case on [DATE]. The Settlement Administrator's records indicate that you have not yet cashed or deposited that check.

**This Reminder is to let you know that your check will automatically expire on [DATE].**

All parties to this case encourage you to cash or deposit your check as soon as possible. If you are unable to locate your check, need a replacement check, or have any other questions, please contact the Settlement Administrator by using the contact information below or contact Plaintiffs' counsel, Berger & Montague, P.C., at (215) 875-3033 or cfundora@bm.net.

Thank you.

*T/J Inspection, Inc. Overtime Settlement*
XXX [INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# Exhibit C

## SCRIPT: 60 DAYS UNTIL CHECK CASHING DEADLINE

**Telephone Script if the Class Member Answers**:

Hello, my name is [Your Name], and I work for [Settlement Administrator]. Our records indicate that you have not yet cashed or deposited the check that was issued to you as part of the Settlement in the case captioned *Lopez v. T/J Inspection, Inc.* The check was mailed to the address that we have on file on [Date].

Have you received the check in the mail?

**If yes**: T/J Inspection and the Plaintiff encourage you to cash your check as soon as possible. You must cash or deposit the check prior to the deadline of [Date], or it will become void and you will no longer be able to cash or deposit your check. Thank you and have a good day.

**If no**: Would you like for us to stop payment on that check and issue a replacement check to you?
    **If yes**: To what address would you like the check to be sent? [Answer.] Thank you.
    **If no**: Thank you.

**Telephone Script for Messages (voicemail or otherwise)**:

Hello. This message is for [Name of Collective Member]. My name is [Your Name], and I work for [Settlement Administrator]. Our records indicate that you have not cashed or deposited the check that was issued to you as part of the Settlement in the case captioned *Lopez v. T/J Inspection, Inc.* for unpaid overtime compensation. Your check must be cashed by [Date]. If you have not received the check; if you have lost it and would like a replacement to be sent to you; or if you have any questions, please call [Settlement Administrator Telephone Number]. Thank you.